Lillian BERNSTEIN, Executrix of the Estate of Kalman Bernstein, deceased, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17407.

United States Court of Appeals
Fifth Circuit.

May 29, 1959.

Taylor, Dowling, Culverhouse & DeCarion, George H. DeCarion, Harry G. Taylor, Miami, Fla., for petitioner.

Davis W. Morton, Jr., Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys., Arch M. Cantrall, Chief Counsel, John M. Morawski, Sp. Atty., Internal Revenue Service, Washington, D. C., for respondent.

Before RIVES, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The Commissioner of Internal Revenue determined deficiencies in the income taxes of Kalman Bernstein for the years 1943, 1944 and 1945. He died on January 21, 1953. His executrix, who for convenience will be referred to as the taxpayer, sought a redetermination of the taxes by the Tax Court. On facts, mostly stipulated, the Tax Court made extended findings and conclusions and directed that a decision be entered under its Rule 50.[1]

1. "(b) Procedure in absence of agreement.—If, however, the parties are not in agreement as to the amount of the deficiency or overpayment to be entered as the decision, in accordance with the report of the Court, either of them may file with the Court a computation of the deficiency or overpayment believed by him to be in accordance with the report of the Court. The Clerk will serve a copy thereof upon the opposite party, will place the matter upon a motion cal-

The Commissioner submitted a computation as did the taxpayer. The Commissioner tendered another computation for an amount which was larger than that which it first proposed. A hearing was had and both the Commissioner and the taxpayer submitted oral argument which was followed by briefs of both parties. A decision was entered determining a deficiency in accordance with the first of the Commissioner's computations. The taxpayer asks us to review and set aside the Tax Court's decision.

The decedent, Kalman Bernstein, was the directing head of a retail jewelry business which was conducted in the name of K. Burns & Son. During all of the years 1943, 1944 and 1945, there were two stores in the operation, one at 114 East Flagler Street, Miami, Florida, and the other at 201 Laura Street, Jacksonville, Florida. From the latter part of 1942 until June 30, 1944, a third store at 38 N. E. 1st Avenue, Miami, Florida, known as Simpsons, was under the same ownership and management. The decedent actively managed the Flagler Street store. He maintained strict control over the managers of the other stores, and for these he did the buying. Sales, with only occasional exceptions, were made for cash. The decedent's son, Maurice Bernstein, who had been active in the business, was a member of the Armed Services of the United States between September, 1942, and October, 1945. Federal income tax information returns were filed by K. Burns & Son reporting partnership income as reflected by its books as distributed or distributable to Kalman Bernstein and Maurice Bernstein in equal shares. The share of the partnership income allocated to the decedent in the partnership returns was reported by him in his returns. The Internal Revenue Service found that the books and records of K. Burns & Son did not reflect all of its sales from which it followed, of course, that the returns did not correctly show the decedent's income nor the tax payable upon it. The Commissioner made a computation of income by a percentage markup method. Such method is applied by adding to the cost of goods sold a predetermined percentage of profit. The percentages used were, 45% for 1943, and 48% for 1944 and 1945. By this method and using these percentages the Commissioner found omitted sales for 1943 of $65,003.34, for 1944 of $77,075.-12, and for 1945 of $65,515.86. The Commissioner found that the amounts of the additional sales were diverted and retained by the decedent, added all of these sums to the decedent's reported income and, making other adjustments not here involved, determined deficiencies. Fifty per cent. penalties were proposed by the Commissioner.

The taxpayer petitioned the Tax Court for a redetermination of the tax deficiencies and penalties. In the taxpayer's petition it was asserted that the Commissioner erred in determining that the percentage markup method should be used in computing additional sales and in finding that the proceeds of these sales were diverted and retained by the decedent.

endar for argument in due course, and will serve notice of the argument upon both parties. If the opposite party fails to file objection, accompanied by an alternative computation, at least five days prior to the date of such argument, or any continuance thereof, the Court may enter decision in accordance with the computation already submitted. If in accordance with this Rule computations are submitted by the parties which differ as to the amount to be entered as the decision of the Court, the parties will be afforded an opportunity to be heard in argument thereon on the date fixed, and the Court will determine the correct deficiency or overpayment and enter its decision.

"(c) Limits on argument under this Rule.—Any argument under this Rule will be confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the report already made, and no argument will be heard upon or consideration given to the issues or matters already disposed of by such report or of any new issues. This Rule is not to be regarded as affording an opportunity for rehearing or reconsideration." Rule 50, Tax Court Rules of Practice, 26 U.S.C.A. (I.R.C. 1954) § 7453.

The propriety of the imposition of the fraud penalties was also challenged. The Commissioner answered, admitting or denying the particular allegations of the petition and making affirmative allegations of fraud by way of sustaining the penalties. The taxpayer filed a reply denying any fraud by the decedent in the filing of the tax returns. The case was tried before the Tax Court on a stipulation of facts and the testimony of fourteen witnesses. The record before us incorporates the stipulation but does not include the testimony of any of the witnesses. The Tax Court reached the conclusion that the Commissioner had used too high a percentage in reconstructing profits on retail sales and fixed a proper rate as being 37½%. The Tax Court adopted the Commissioner's premise that there was a partnership and, the contrary not appearing, assumed that the partners participated equally. In the Tax Court's opinion there is this finding:

"The evidence shows and the petitioner, with minor exceptions concedes on brief that at least the following amounts of income were not reported by the decedent:

|                         | 1943         | 1944        | 1945          |
| ----------------------- | ------------ | ----------- | ------------- |
| Unexplained bank deposits | $15,526.00 | $ 9,134.52  | $ 6,390.96    |
| Omitted Sales           | 1,962.19     | 3,581.52    | 9,533.00      |
| Unreported income       | $17,218.19   | $12,716.04  | $15,923.96."  |

The first computation submitted to the Tax Court by the Commissioner increased the decedent's taxable income by the amounts of unreported income as found by the Tax Court. The taxpayer's proposed computation was for a lesser amount of increase and the Commissioner's second proposal included a higher figure. The Tax Court used the computation first filed by the Commissioner as the basis for its decision.

The taxpayer takes the position before us that the Tax Court's findings and decision depart from and are not responsive to the issues as they were submitted to the Tax Court. The unexplained bank deposits, made in the decedent's bank account, should be treated, as the taxpayer says the Commissioner treated them, as omitted sales of the partnership and as such taxable to the decedent only to the extent of the decedent's one-half interest. It may be noted in this connection that the Commissioner contended that the items in question were taxable to the decedent in their entirety. It may also be noted that there was no evidence as to the source of the unexplained bank deposits. The taxpayer does not suggest that there is any evidence which indicates that the unexplained bank deposits were the proceeds of unreported sales of the partnership. The Tax Court's statement that unidentified bank deposits may be considered as constituting income is conceded by the taxpayer to be a correct statement of law. The question for our determination is whether, upon the facts found and stipulated, additional taxes were due. If so, the Tax Court's determination should not be set aside because the Commissioner included the unidentified bank deposits with the unreported sales in his initial deficiency proposal. It is immaterial whether the Commissioner proceeded upon a wrong theory in determining the deficiency, and the taxpayer has the burden of showing that the assessment is wrong on any proper theory. J. & O. Altschul Tobacco Co. v. Commissioner, 5 Cir., 1930, 42 F.2d 609; Alexander Sprunt & Son v. Commissioner, 4 Cir., 1933, 64 F.2d 424; Reinecke v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385; Gowran v Commissioner, 7 Cir., 1937, 87 F.2d 125,

882

reversed on other grounds sub nom. Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224, rehearing denied 302 U.S. 781, 58 S.Ct. 478, 82 L.Ed. 603.

We think the Tax Court was correct in its opinion and correctly carried its findings and conclusions into its decision. That decision is

Affirmed.