Hubert A. Aiken and Marie Aiken v. Commissioner.
Aiken v. Commissioner
Docket No. 5519-67.
United States Tax Court
T.C. Memo 1971-3; 1971 Tax Ct. Memo LEXIS 331; 30 T.C.M. (CCH) 29; T.C.M. (RIA) 71003; January 6, 1971, Filed William L. Taylor, Jr., and Ford P. Mitchell, 9th Floor Maclellan Bldg., Chattanooga, Tenn., for the petitioners. John M. Wylie, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: Respondent determined deficiencies in income tax and additions to tax against the petitioners as follows: Addition to
Tax§ 6653(a)
Year
Income Tax
IRC of 1954
1962
$2,388.47
$119.42
1963
1,524.06
76.20
1964 1,945.06
97.25
Total
$5,857.59
$292.87 The issues for decision are: (1) whether the petitioners understated their taxable income for the taxable years 1962, 1963, and 1964 derived from the operation of a liquor store and, if so, the extent of the understatement; and (2) whether any part of any underpayment of tax for these years is due to negligence or intentional *332 disregard of rules and regulations. Determination of the amount of taxable income will necessarily dispose of certain adjustments made to allowable deductions for medical expenses which are in issue only because they depend upon the proper amount of adjusted gross income. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Hubert A. Aiken and Marie Aiken are husband and wife and were such during the taxable years 1962, 1963, and 1964. At the time of the filing of the petition herein, they were residents of Chattanooga, Tennessee. They filed their joint Federal income tax returns for the taxable years 1962, 1963, and 1964 with the district director of internal revenue at Nashville, Tennessee. As a matter of convenience, Hubert A. Aiken will hereinafter be referred to as the petitioner. Petitioner had a high school education. Since 1934, he has been a construction electrician, working at various job sites in several states whenever jobs were available. He has spent a considerable amount of time studying in connection with his trade. Around August 1, 1961, petitioner purchased a retail liquor store located at 615 Cherry Street, *333 Chattanooga, Tennessee. Since that time he has operated the liquor store as a sole proprietorship under the name of M. & H. Liquor Store. Sometime prior to his acquisition of the liquor store, he had worked for six months as a clerk in a retail liquor store in Chattanooga. His duties at that time consisted of selling to customers, doing some ordering and placing stock on shelves. After he bought his store in 1961, petitioner spent the greater part of his time in the store until 1964. In 1964, he again began working as an electrician on a construction project. The petitioner operated his liquor business on an accrual method of accounting and a calendar year basis. Petitioner's store was about 15 feet wide with a door in the middle and about 13 or 14 feet long. The cash register was on a counter at the rear of the store. The liquor and wine offered for sale was arranged on 30 shelves. There was also an L-shaped office and storage area, extending back about 20 to 25 feet from the front of the store and about 8 to 10 feet across. The storage area had shelves where stock was kept to replace that which was sold. Petitioner did not keep large quantities of stock in the storage area. *334 During the taxable years 1962 through 1964, petitioner sometimes had two sales clerks working at his store, but sometimes only one. During the greater part of 1962 petitioner also employed a handyman. The store was open every day until 11 p.m., Monday through Saturday. It was not open on holidays. Petitioner's store was located in a rundown area in which were located a number of offices and industrial plants. At the time petitioner purchased the store, most of the customers were people passing on the street, and most of the sales were of 1/2 pints and pints of liquor and occasionally a fifth of liquor. There was not a great volume of wine sales. At the time of purchase, the volume of sales was normal for a store of that type. In order to increase the volume of sales, petitioner introduced the sale of quarts and different brands of liquor. Petitioner's inventory of wine never exceeded 8 to 10% of total inventory. Shortly after he purchased the store, petitioner began selling liquor in cases to three individuals who had been former customers of a liquor store owner whose store had been closed by state authorities. These individuals were engaged in reselling the liquor purchased *335 from petitioner. This trade lasted from late 1961 until the early part of 1964 when these three individuals' operations were halted by state authorities. During the taxable years 1962 through 1964, petitioner also had other sales of cases of liquor as a result of his contacts with the construction trades and with fraternal organizations. The largest part of petitioner's case sales volume was transacted in the morning. If petitioner did not have enough cases in stock to meet a customer's order, he would order it from the wholesaler who would deliver it to petitioner's store in about 15 to 25 minutes. The wholesalers were open until 5 p.m. Monday through Friday and were not open on Saturday except during the Christmas season. During the taxable years 1962 through 1964, the minimum prices for retail liquor and wine sales were set by the statutory law of the State of Tennessee. Section 57-701(3), Tennessee Code Annotated, provided that the minimum price to be charged for retail sales of liquor and wine was as follows: The retailer's list price of distilled spirits shall not be less than the retailer's cost price, plus, where sales are made in less than quantities of one (1) case, *336 a markup of at least twenty-seven and one-half percent (27.50%) of the retailer's cost price, or plus, where sales are made in quantities of one (1) case or more, a markup of at least ten percent (10%) of the retailer's cost price. The retailer's list price of wines shall not be less than the retailer's cost price, plus, where sales are made in quantities of less than one (1) case, a markup of at least forty percent (40%) of the retailer's cost price, or plus, where sales are made in quantities of one (1) case or more, a markup of at least twenty percent (20%) of the retailer's cost price. The retailer's cost price shall be calculated upon the actual wholesale sales price, which includes any tax allowed in the computation of the wholesaler's markup as set out in paragraph (2) of this section. During the taxable years 1962 through 1964, the City of Chattanooga imposed a city tax of 3.6 percent (3.6%) of the cost of all liquor and wine purchased from a wholesaler which petitioner was required to pay. The city required that the tax be paid directly to the wholesaler from whom a purchase was made. In the operation of his store during the years 1962 through 1964, petitioner marked all *337 liquor and wine in accordance with the prices listed in the monthly issue of the Tennessee edition of the magazine "Southern Beverage Journal" which prices were in conformance with section 57-701(3), supra, and all sales made in the years in question were made at such marked prices, increased, however, by the retail sales tax imposed by the State of Tennessee. Sales of liquor and wine were rung up on the cash register. The price rung up was the sales price per bottle or per case, including the retail sales tax. The register used a tape which reflected individual sales. The maximum amount that the register would record on any one sale was $50; therefore, sales in excess of that amount required more than one ring. The tape did not separately indicate the amount of sales tax nor did it reflect whether the sale was of liquor or of wine or whether or not in case lots. 31The tape would indicate the total amount of sales rung up on the cash register. Each morning petitioner would remove the tape reflecting the sales recorded thereon from the previous day. Petitioner also kept a sales book which contains daily entries. Until some time in 1964, petitioner did not retain the cash register *338 tapes. In the sales book petitioner made notations indicating case sales and the sales prices thereof. He made these entries in order to keep track of approximately the number of cases he sold. With minor exceptions, the case sales involved liquor rather than wine. [1] The monthly totals of the amounts recorded in the daily sales book as case sales were as follows:
1962
1963
1964
January
$ 848.08
$ 1,324.38
$ 2,003.14
February
824.93
1,324.00
1,956.39
March
833.15
1,146.26
1,408.43
April
1,306. 87
1,104.88
1,667.09
May
1,051.35
1,093.12
2,383.13
June
1,473.79
507.53
2,639.40
July
1,684.60
816.52
2,991. 10
August
1,751.70
871.41
3,107.53
September
1,827.21
872.28
2,827.13
October
1,866.66
1,593.72
2,851.36
November
2,433.69
1,846.74
2,336.31
December 3,248.14
2,648.92
3,428.18
Total
$19,150.17
$15,149.76
$29,599.19
The only cash register tapes submitted in evidence were those for December 4 and December 14, 1964. The tape for December 4 shows total sales *339 of $362.40 and has no notations of case sales. The sales book for that date has an entry of $505.84 as total sales, of which $143.44 is listed as sales in case lots. The tape for December 14 showed total sales of $460.92 and contained notations that $182.71 of this amount represented case sales. The sales book for that date was consistent with the tape. Petitioner maintained a bank account at the American National Bank in Chattanooga. All of the expenses of the liquor store were paid by checks drawn on such account. His check book represented the record of the expenditures in the operation of the liquor store. No personal expenses of petitioner were paid from this account. When petitioner and his employees took liquor from the store for personal use, it would be rung up on the cash register as a sale and the money would be placed in the register. Petitioner retained an accountant to prepare his Federal income tax returns, his quarterly payroll reports and his monthly state sales tax reports and to assist him in taking inventory. Once a month petitioner would turn his sales book over to his accountant who totalled the sales for the month, eliminating the state sales tax. In *340 preparing petitioner's Federal income tax returns, the accountant would report as receipts the amounts shown as sales receipts in the sales book, after elimination of the state sales tax, and would report as expenses the amounts shown in the check book. He would also take the opening inventory, add the purchases and subtract the closing inventory to arrive at cost of goods sold and then subtract this from sales receipts to arrive at the gross profit. Expenses were then subtracted to arrive at the net profit. In the joint Federal income tax returns for the taxable years 1962, 1963, and 1964, net profit or loss from the operation of the liquor store was computed and reported as follows: *13
1962
1963
1964
Gross Receipts
$104,577.76
$93,496.05
$98,190.02
Opening Inventory
$ 9,251.54
$10,565.11
$ 8,979.23
Merchandise purchased 94,530.99
80,229.70
86,123.59
Total
$103,782.53
$90,794.81
$95,102.82
Less: Ending inventory 10,565.11
8,979.23
8,700.58
Cost of Goods Sold
93,217.42
81,815.58
87,302.24
Gross Profit
$ 11,360.34
$11,680.47
$10,887.78
Less: Business deductions
9,671.70
9,708.06
11,455.49
Net profit or (loss)
$ 1,688.64
$ 1,972.41
($ 567.71)
*341 32 The gross receipts as reported included the 3.6 percent tax imposed by the City of Chattanooga on the cost of liquor and wine purchased from wholesalers. This 3.6 percent tax was also included in petitioner's cost of goods sold. As of December 31, 1962, and December 31, 1963, petitioner had accrued purchases of $3,811.86 and $1,102.64, respectively. These amounts were not included in the cost of goods sold reported on the returns for the taxable years 1962 and 1963. The proper deductions for cost of goods sold on these returns, adjusted for accrued purchases omitted, are as follows: *13
Taxable Years Ended
Dec. 31, 1962
Dec. 31, 1963
Cost of Goods Sold per return
$93,217.42
$81,815.58
Plus additional accrued purchases 3,811.86
1,102.64
Cost of Goods Sold as corrected
$97,029.28
$82,918.22 The corrected cost of goods sold includes the 3.6 percent tax imposed by the City of Chattanooga on the cost of all liquor and wine purchased from wholesalers. The net profit or loss reported for the taxable years 1962 and 1963, corrected for the omitted purchases, is as follows: 1962
1963
Gross receipts
$104,577.76
$93,496.05
Corrected cost of goods sold 97,029.28
82,918.22
Gross Profit
$ 7,548.48
$10,577.83
Less:
Business deductions $ 9,671.70
$ 9,708.06
Net Profit or (loss)
($ 2,123.22)
$ 869.77
*342 The following table shows the ratio between gross profit and cost of goods sold reported as corrected for each of the taxable years 1962 through 1964: 1962
1963
1964
Gross receipts reported, including cost, plus markup and 3.6% city tax
$104,577.76
$93,496.05
$98,190.02
Corrected cost of goods sold 97,029.28
82,918.22
87,302.24
Gross profit
$ 7,548.48
$10,577.83
$10,887.78
Cost of goods sold less 3.6% tax
97,029.28 1.036
$ 93,657.60
82,918.22 1.036
$80,036.89
87,302.24 1.036
$84,268.57
Ratio of gross profit to cost of goods sold
8.06%
13.2%
12.9%
The following table compares the gross receipts reported by petitioner with what the gross receipts would have been if 100 percent of sales had been case sales of liquor at cost plus the 10 percent markup: 1962
1963
1964
Corrected cost of goods sold
$ 97,029.28
$82,918.22
$87,302.24
Cost of Goods Sold Less 3.6% tax
97,029.28 1.036
$ 93,657.70
82,918.22 1.036
$80,036.89
87,302.24 1.036
$84,268.57
Gross receipts if all sales at 10% markup plus 3.6% tax
93,657.60 X 1.136
$106,395.03
80,036.89 X 1.136
$90,921.91
84,268.57 X 1.136
$95,729.10
Gross receipts reported
$104,577.76
93,496.05
$98,190.02
Difference
($ 1,817.27)
$ 2,574.14
$ 2,460.92
*343 33 In the notice of deficiency, the respondent determined that the petitioner's income from the operation of the liquor store was understated in the returns for the taxable years 1962, 1963, and 1964, setting forth the following explanation: (a) In the absence of adequate records, your taxable income has been computed by application of percentage mark-up method and allowance for case lot sales. See Exhibit A for computation of increase in income. The detailed computations were as follows: *13 Increase in Income by Application of Percentage Mark-Up Method *13
Taxable Years Ended
12/31/62
12/31/63
12/31/64
Cost of goods sold per return
$ 93,217.42
$ 81,815.58
$ 87,302.24
Plus additional accrued purchase 3,811.86
1,102.64
0
Cost of goods as adjusted $ 97,029.28
$ 82,918.22
$ 87,302.24
Basic cost - cost of goods sold as adjusted less 3.6% city tax: Above amounts divided by 1.036
$ 93,657.60
$ 80,036.89
$ 84,268.57
Cost of case sales:
1964 - Gross sales by the case, per records - $29,599.19, adjusted to basic cost ($29,599.19 divided by 1.036)[sic]
26,055.63
1962 and 1963 - Estimated on the basis of 1964 case sales, 30.14% of basic cost of goods sold 28,228.40
24,123.12
Cost of regular sales $ 65,429.20
$ 55,913.77
$ 58,212.94
Totals sales:
Case sales (based on 10% markup and 3.6% city tax):
$28,228.40 X (3.6% + 110%)
$ 32,067.46
$24,123.12 X (3.6% + 110%)
$ 27,403.86
$26,055.63 X (3.6% + 110%)
$ 29,599.19
Regular sales (based on 27.5% markup and 3.6% city tax):
$65,429.20 X (3.6% + 127.5%)
85,777.68
$55,913.77 X (3.6% + 127.5%)
73,302.95
$58,212.94 X (3.6% + 127.5%)
76,317.16
Gross receipts as adjusted
$117,845.14
$100,706.81
$105,916.35
Gross receipts reported on return 104,577.76
93,496.05
98,190.02
Adjustment - increase in income $ 12,267.38
$ 7,210.76
$ 7,726.33
*344 The respondent also redetermined the allowable deductions for medical expenses for each year to reflect the increases in adjusted gross income. Respondent also asserted the 5 percent addition to tax under section 6653(a), determining that part of the underpayment of tax for each of the taxable years 1962, 1963, and 1964 was due to negligence or intentional disregard of rules and regulations. Opinion The respondent computed the petitioner's gross receipts from his retail liquor business for the taxable years 1962, 1963, and 1964 by use of the percentage markup method. The petitioner maintains that he kept accurate records, including a daily sales book in which were recorded all receipts, that his returns prepared therefrom by an independent accountant reflect the income which he derived from the business, and that therefore the use of the percentage markup method is not warranted. He further contends that since the proper application of the percentage markup method in this case would require an allocation of sales between case sales and individual bottle sales, and since no accurate records were available for such purpose, the respondent's use of such method without any corroboration *345 through use of a net worth or some other method, is arbitrary and unreasonable, and should not be sustained. It is well established that if a taxpayer's records are inadequate to permit a verification of the returns or if the records are unreliable the respondent may determine the taxpayer's taxable income by other reasonable means, including the percentage 34 markup method. See Bollella v. Commissioner, N(C.A. 6) 374 F. 2d 96; Kurnick v. Commissioner, (C.A. 6) 232 F. 2d 678; Bernstein v. Commissioner, (C.A. 5) 267 F. 2d 879, all affirming Memorandum Opinions of this Court; and Hyman B. Stone, 22 T.C. 893. On his returns for the taxable years 1962, 1963, and 1964 the petitioner reported gross receipts of $104,577.76, $93,496.05, and $98,190.02, respectively. These represent ratios of gross profit to cost of goods sold for those years of 8.06%, 13.2%, and 12.9%, respectively. During each of the taxable years the law of Tennessee (section 57-701 (3), Tenn. Code Anno.) required that all retail sales of liquor be made at not less than the retailer's cost price plus a markup of at least 27 1/2% for sales of less than a case and *346 a markup of at least 10% for sales in quantities of one case or more. The corresponding markups for sales of wine were 40% and 20% respectively. The petitioner testified that all his sales were made in conformity with state law, and the parties are in agreement as to the cost of goods sold for each of the years in question. If all petitioner's sales had consisted of sales of liquor in case lots, the markup would have been at least 10%, resulting in gross receipts of $106,395.03, $90,921.91, and $95,729.10 for the years 1962, 1963, and 1964, respectively. Thus, the gross receipts reported by the petitioner would seem to imply that in 1962 all sales were case sales and that for the years 1963 and 1964 substantially all were case sales. Upon the basis of the record presented we must conclude that the petitioner has not established that such was true. The petitioner testified that all sales, including case sales of liquor, were rung up on a cash register, and that the daily totals were entered in a sales book which he maintained on a daily basis. However, he did not retain the cash register tapes for the years 1962 and 1963 and for a portion of the taxable year 1964. Indeed, only two *347 daily cash register tapes were presented in evidence and one of these contradicts his statement that all sales were recorded on the cash register. The daily sales book for that date indicates case sales which were not contained on the cash register tape for that day. As we understand it, the petitioner contends that, even so, the returns were proper in that all sales were contained in the daily sales book from which his accountant took the figures which were reported in the returns as gross receipts. However, we note that the daily sales book shows total case sales for the years 1962, 1963, and 1964 of only $19,150.17, $15,149.76, and $29,599.19, respectively. In this respect the petitioner stated that there were three customers who regularly bought large quantities of liquor from him in case lots and that not all of these were entered as such in the daily sales book. This testimony is not persuasive in the light of his other testimony and the record as a whole. In the first place, he testified that he noted case sales in the book in order to keep track of the approximate number of cases he sold. In view of the fact that he entered substantial amounts of case sales, and the fact that *348 he failed to explain why he would have omitted substantial amounts of such sales, we cannot conclude that the petitioner had the amount of case sales which he now claims. Furthermore, we note that in 1964 the total gross receipts reported was approximately equal to the average gross receipts received over the three-year period, despite the fact that in early 1964 the three customers who, according to the petitioner, accounted for the bulk of the case sales, ceased buying from the petitioner. In making his determination, the respondent determined that 30.14% of goods sold in 1964 were sold in case lots, as indicated by the petitioner's records for that year. He also employed the same percentage for the taxable years 1962 and 1963, which was a greater percentage for the latter two years than indicated in the petitioner's records. The remaining sales were treated as individual bottle sales of liquor, which resulted in the determination of greater gross receipts than were reported. He did not determine that any sales constituted sales of wine. This was to the petitioner's benefit in view of the higher markup required in sales of wine. Since the petitioner's records do not support his *349 claim with regard to the amount of case sales made in the years in question and since the other testimony and evidence is not sufficient to show error in the respondent's determination in this respect, we are constrained to sustain the respondent's determination of the amount of case sales. The petitioner also testified that he experienced breakage and theft of inventory 35 and that the low percentage of gross profits reported is attributable to some extent to this. However, no records were introduced to establish losses from these sources, and the petitioner in his testimony did not even attempt to estimate the amount of any such losses. Under the circumstances, we are not in a position to find what losses, if any, the petitioner sustained in these respects. See J. J. Dix v. Commissioner, (C.A. 2) 223 F. 2d 436, affirming a Memorandum Opinion of this Court. Under the circumstances herein, we must conclude that the respondent was justified in finding that the petitioner's records were inadequate and that his use and application of the percentage markup method was not arbitrary or unreasonable. Therefore, the burden of proof was upon the petitioner to show that *350 the respondent's determinations of his taxable income were incorrect. Since the petitioner has not shown error in such determinations they are approved. The respondent also determined that some part of the underpayment of tax for each of the years in question was due to negligence or intentional disregard of rules and regulations, and asserted the 5% addition to tax provided by section 6653(a) of the Internal Revenue Code of 1954. [2] Here again, the burden of proof was upon the petitioner to show error on the part of the respondent. See Byron H. Farwell, 35 T.C. 454. The petitioner has not sustained such burden, and accordingly the respondent's assertion of the additions to tax is approved. *351 Decision will be entered for the respondent. Footnotes
1. During the taxable years 1962 through 1964, there were only ten entries indicated as sales of cases of wine, which totalled less than $175.↩
2. Section 6653(a) of the Code provides as follows: Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩