LEONARD S. JERNIGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jernigan v. Commissioner
Docket No. 5284-75.
United States Tax Court
T.C. Memo 1978-13; 1978 Tax Ct. Memo LEXIS 502; 37 T.C.M. (CCH) 46; T.C.M. (RIA) 780013; January 12, 1978, Filed *502 Held, respondent's disallowance of medical deduction upheld as petitioner did not prove expenses or that his father qualified as his dependent. Held, further, the Commissioner properly reconstructed taxpayer's basis in inventory lost in a fire using the percentage of gross receipts method where taxpayer did not adequately reconstruct his records. Taxpayer is not subject to the $100 casualty loss limitation of section 165(c)(3) since the loss was incurred in a trade or business. Leonard S. Jernigan, pro se. Gary F. Walker, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined *504 a deficiency of $577.67 in petitioner's 1972 Federal income tax. The two issues presented are the amount of medical expenses incurred by petitioner in 1972 and the amount of fire casualty loss suffered by petitioner in 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioner, Leonard S. Jernigan, maintained his legal address in Dunn, N.C., at the time of filing his petition herein. Petitioner and his nonpetitioning wife, Joyce B. Jernigan, filed their joint Federal income tax return for the taxable year 1972 on the cash basis of accounting with the Internal Revenue Service Center, Chamblee, Ga.[1]
Petitioner claimed a deduction for medical expenses in the amount of $1,177.72 on his 1972 income tax return. Of this amount, $455.18 represented the cost of medicine and drugs, of which respondent allowed $264.89 and disallowed $190.29. Petitioner claimed an amount of $497.51 as the balance of insurance premiums not entered in his itemized expenses, of *505 which respondent allowed $469.44 and disallowed $28.07. Petitioner claimed a further medical expense captioned "Expense (3000) Mi. at 6" (46 trips to Chapel Hill) $180.00," which respondent entirely disallowed on the ground the expense represented travel expenditures incurred to transport petitioner's father to and from a hospital. Petitioner did not claim his father as a dependent on his 1972 income tax return. There is an additional $44.50 which petitioner did not claim as a medical expense and which respondent determined petitioner was entitled to claim in the taxable year 1972. Petitioner's father was 73 or 74 years of age during 1972. He had no income producing assets such as savings accounts or savings bonds, and his sole means of support was that contributed by petitioner (his only child) and Social Security checks amounting to a little more than $100 per month. Petitioner operated a small retail grocery and gas station business until March 1972, when a fire destroyed the property used in the grocery business. At the time of the loss petitioner owned a fire insurance policy through the Ellis Barbour Insurance Agency, Dunn, N.C., which insured petitioner *506 for a loss not exceeding $4,000. The adjuster for the insurance company valued petitioner's loss to be between $2,000 and $2,500 and paid petitioner $2,250 in June 1972 in final settlement of the loss. On his 1972 income tax return, petitioner computed his deductible loss to be $6,150 (gross loss of $8,500 less insurance recovery of $2,250 and $100 casualty loss limitation). Respondent allowed a deduction of $443.12 in his notice of deficiency but permitted an additional $1,206.88 (for a total casualty loss of $1,650) in response to certain sales tax records lodged by petitioner after trial and admitted by the Court. The sales tax records of petitioner's business show petitioner had gross sales in groceries of $17,659.62 over the 16-month period November 1, 1970, through February 28, 1972, and sales of $15,241.35 over the 12-month period January 1, 1971, through December 31, 1971. By applying a profit margin markup against gross sales, respondent arrived at petitioner's cost of goods sold. Respondent then divided an inventory turnover figure into the total cost of goods sold to arrive at an estimate of the average inventory on hand ready to be sold on a day-to-day basis. This *507 amount was used to determine petitioner's loss. The North Carolina State Sales Tax Audit Division informed respondent that an average retail operation similar to petitioner's has a markup between 20 and 35 percent, depending on the items sold. Respondent used a 20 percent markup, thereby determining petitioner's total inventory cost was $14,127.70 over the 16-month period and $12,193 over the 12-month period. Respondent used the lower 12-month period figures as the total inventory cost. Finally, respondent estimated petitioner's inventory turned over every 60 days, or six times a year. Dividing 6 into the $12,193, the cost of goods sold, yields an average inventory cost of $2,032.17. Respondent then practically doubled that figure to $4,000 in order to insure the reasonableness of his estimate. Petitioner did not report any of his gross receipts, totaling $29,238.88, on his income tax returns for the years 1971 or 1972, nor did he report any profit from the business. On his 1972 return, total income reported was $9,384.21 for both himself and his wife, and the entire amount was listed under wages, salaries, tips, and other employee compensation.
To support his claimed loss *508 for income tax purposes, petitioner reconstructed a list of his inventory destroyed in the fire. The list reflected a cost basis of $2,793.12 in the property destroyed and was used by respondent in computing the casualty loss in his notice of deficiency. The amount was stipulated to by both parties, although petitioner agreed to do so only on condition he could contend in court that his loss was greater than the amount reflected on the list. Petitioner's out-of-pocket expenses upon the acquisition of the store and inventory included a down payment of $600 and a cash payment of $200 made two months after the purchase. Petitioner owed an additional $1,800 on the purchase price.The cash payment and debts total $2,600 and represent the total amount paid by petitioner for the business. Petitioner borrowed an additional $4,428 from the First National Bank in Dunn, N.C., at the time of purchase, using the store and inventory as collateral, in order to provide working capital. OPINION Petitioner offered no testimony or evidence in support of his claimed medical deduction for medicine and drugs and insurance premiums in respect of those disallowed by respondent. He is, therefore, *509 not entitled to deduct those amounts. The remaining $180 traveling expense medical deduction depends solely on whether petitioner's father qualified as a dependent of petitioner since section 213(a)(1) [2] permits a deduction only for the taxpayer, his spouse, and dependents. This, in turn, depends solely on whether petitioner provided over half of his father's support, section 152(a)(4). Petitioner's father was elderly and often sick, requiring petitioner to spend time caring for him and transporting him to doctors. The father had no income except for Social Security checks of just over $100 per month and relied heavily on petitioner, his only child. Petitioner did not claim his father as a dependent on his tax return, but testified that he provided much of his father's support. However, since petitioner did not show his contributions exceeded his father's Social Security benefits, his father does not qualify as a dependent, and the $180 travel expenses may not be deducted by petitioner. A taxpayer is, of course, permitted to reconstruct his expenditures *510 where the failure to produce adequate records is due to destruction from fire. Cohan v. Commissioner, 39 F. 2d 540 (2d Cir. 1930), and section 1.274-5(c)(5), Income Tax Regs. If the taxpayer fails to adequately reconstruct his records, then respondent may use any reasonable method to compute the taxpayer's income that clearly reflects his income, section 446. Respondent used the percentage markup method to reconstruct petitioner's income. This method has been recognized as an appropriate means of reconstructing income, Bollella v. Commissioner, 374 F. 2d 96 (6th Cir. 1967), Western Supply & Furnace Co. v. Commissioner, 295 F. 2d 341 (7th Cir. 1961), Bernstein v. Commissioner, 267 F. 2d 879 (5th Cir. 1959), all affirming Memorandum Opinions of this Court, and Stone v. Commissioner, 22 T.C. 893 (1954). Petitioner does not object to any of the computations made by respondent or to the use of either a 20 percent value for markup or a 60-day turnover rate for inventory. Indeed, we note that use of a 20 percent rather than a 35 percent markup is most favorable to petitioner. Additionally, a turnover *511 rate of six times a year is probably low in light of the high turnover rate of both perishable and nonperishable items such as soft drinks, beer, cigarettes, potato chips, candy, and similar items; a low turnover is similarly beneficial to petitioner. Because this reconstruction is reasonable, we must find for respondent unless petitioner has adequately and reasonably reconstructed his records. We do not believe he has done this. Although the purchase price of the business was $2,600 and petitioner took out a loan of over $4,400 to provide for working capital, petitioner admitted that some of the proceeds of the loan could have been used for living expenses, repairs, or for the purchase of gas used at petitioner's gas station located at the store. Petitioner did provide a list of 22 wholesalers and jobbers from whom he made purchases, but he was able to obtain the amounts purchased from only two of the wholesalers with whom he dealt. This does not provide enough information from which we can ascertain the cost of the inventory, even when taking into account the gross sales figures obtained from sales tax records. Such corroborating evidence as there is does not support petitioner's *512 claimed deductible loss of $6,150. Petitioner testified he was offered $5,700 for his business immediately prior to the fire. If the store and inventory were worth $5,700, petitioner would be entitled to only a $3,450 deduction even assuming the fair market value of $5,700 did not exceed petitioner's basis (the amount allowed as a loss). Moreover, the insurance company offered and petitioner accepted $2,250 in full settlement for his loss. Both respondent and petitioner have assumed petitioner is subject to the $100 casualty loss limitation of section 165(c)(3). This is in error. Sections 165(a) and 165(c)(1) permit a taxpayer to deduct the full amount of the loss if the loss was incurred in a trade or business, subject only to the condition that the loss not be otherwise compensated. Therefore, we find that petitioner is entitled to a casualty loss deduction of $1,750 ($4,000 loss less $2,250 insurance compensation). Decision will be entered under Rule 155. Footnotes
1. It is unclear from the record why Joyce B. Jernigan was not a party to the proceedings.↩
2. All statutory references are to the Internal Revenue Code of 1954 in effect during the taxable years in issue.↩