T.C. Memo. 2002-181

UNITED STATES TAX COURT

WESLEY W. BURNETT AND PATSIE BURNETT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3265-01.                    Filed July 31, 2002.

Wesley W. Burnett, pro se.

<u>James E. Archie</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Respondent issued notices of deficiency to
petitioners on the basis of their failure to file Federal income
tax returns for 1994, 1995, 1996, and 1997.[1]  Respondent

_____

[1] Each petitioner received one notice of deficiency for
1994, 1995, and 1996 and a second notice of deficiency for 1997.

determined the following deficiencies and additions to tax for

Wesley W. Burnett (Mr. Burnett):[2]

|  |  | | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 | Sec. 6651(f) |
|---|---|---|---|---|
| 1994 | $649 | $49 | —0— | -0- |
| 1995 | 13,019 | -0- | $706 | $9,764 |
| 1996 | 12,923 | —0— | 688 | 9,692 |
| 1997 | 12,778 | —0— | 684 | 9,584 |

Respondent determined the following deficiencies and additions to

tax for Patsie Burnett (Ms. Burnett):[3]

|  |  | | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 | Sec. 6651(f) |
|---|---|---|---|---|
| 1994 | $649 | $49 | —0— | -0- |
| 1995 | 7,832 | -0- | $425 | $5,874 |
| 1996 | 7,719 | —0— | 411 | 5,785 |
| 1997 | 7,591 | —0— | 406 | 5,693 |

In the answer, respondent conceded that neither petitioner

is liable for the additions to tax under section 6651(f) and

alleged that they are liable under section 6651(a) for additions

to their 1995, 1996, and 1997 taxes.  Respondent alleged that the

additions to the respective years' taxes under section 6651(a)

are $3,255, $3,231, and $3,195 for Mr. Burnett and $1,958,

$1,930, and $1,898 for Ms. Burnett.

---

[2] Section references are to applicable versions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.

[3] The difference between the amounts shown for each petitioner is related to the computation of self-employment tax.

We must decide:

1  Whether petitioners are liable for the deficiencies determined by respondent.  We hold they are.

2.  Whether petitioners are liable for the additions to tax under section 6651(a)(1).  We hold they are.

3.  Whether petitioners are liable for the additions to tax under section 6654.  We hold they are.

### FINDINGS OF FACT

Some facts were stipulated, and we incorporate by this reference the parties' stipulation of facts and the accompanying exhibits.  We find those facts accordingly.  Petitioners are husband and wife, and they resided in Texas, a community property State, at all relevant times.

During 1994, Mr. Burnett was employed by and received wages from Lubbock Independent School District (Lubbock).  He received from Lubbock $22,139 of wages in its 1993/1994 school year, of which $16,177 was received in 1994.  He also received wages from Lubbock in September, October, and November of 1994.  The net (take-home) amount of these wages was $910, $930, and $164, respectively.

Mr. Burnett is the owner and publisher of a weekly newspaper (newspaper) named "The Post Dispatch".[4]  He had originally sold

---

[4] Petitioner also printed a magazine (magazine) known as the "Republic of Texas".

the newspaper in 1992 but repurchased it in December 1994, operating it as a sole proprietorship during each subject year. Among other things, the newspaper published stories on news, weather, and sports. The newspaper also accepted and published advertisements. During 1997, the newspaper was 50 cents per single copy, with a reduced price in the case of annual subscribers. The annual subscription rate was $16.50 in 1995, $20 in 1996, and $26 in 1997, and the total number of paid subscribers in those respective years was 1,505, 1,450, and 1,500. For 1997, the newspaper's classified advertising rate (which was payable in advance absent other acceptable credit arrangements) was 25 cents per word for a private party advertisement and 50 cents per word for a commercially placed advertisement. During 1997, its advertising rate (other than in the classified section) was $4.50 per column square inch, with a 20-percent discount for runs of at least four consecutive issues.

Petitioners have never filed a 1994, 1995, 1996, or 1997 Federal income tax return. On September 2, 1997, respondent's revenue agent (agent) wrote to Mr. Burnett requesting that he meet with her at a stated time and place on September 12, 1997, in order to determine his 1993 through 1996 Federal income tax liability. The letter stated that he should bring with him to the meeting all of his business records and certain of his personal records; the letter identified the referenced business

and personal records by name (e.g., general ledger, cash receipts and disbursements journal) or by class (e.g., "all Financial information"). On or about September 4, 1997, Mr. Burnett responded to the agent asking her to change the scheduled date of the meeting to September 26, 1997, because, he stated, he had a long-standing commitment on the scheduled date. The agent honored that request, writing to Mr. Burnett on September 8, 1997, stating that the meeting had been rescheduled to a stated time and place on September 26, 1997. That letter also stated that "If you do not come in for the appointment, I will conduct the examination and determine your tax liability using sources available to the IRS."

On or about September 19, 1997, Mr. Burnett wrote to the agent stating that he had "carefully consider[ed]" her letters to him and decided that he would not meet with her because he was "not one made liable for any tax as defined by the Internal Revenue Code." The letter acknowledged the agent's statement that she would determine his tax liability on her own, if he failed to cooperate with her, but claimed that the Internal Revenue Service lacked the authority to do so because he is not one "clearly made liable to pay any tax". Mr. Burnett claimed in the letter that he had studied the Code and related regulations and concluded that he was "not one made liable for any [Federal income] tax as defined by the Internal Revenue Code." Mr.

Burnett stated in the letter that he had "made several requests in the past few years of the Internal Revenue Service, to clearly state the law or Internal Revenue Code section which makes me one who is made liable to pay any tax". Mr. Burnett concluded in the letter that he had yet to receive an answer from the Internal Revenue Service as to his requests and that "Naturally, this has led me to believe that there is no law or code section making me liable to pay any tax." The letter included as attachments: (1) A 3-page May 7, 1996, letter written by Mr. Burnett and addressed to the Commissioner in Washington, D.C. and (2) a 23-page October 9, 1995, letter (accompanied by an 11-page attachment) written by Mr. Burnett and addressed to the Internal Revenue Service in Austin, Texas. Both letters contained primarily tax protester rhetoric as to the validity of the Federal income tax system. On April 22, 1998, the agent wrote Ms. Burnett a letter offering to meet with her at a stated time and place in order to determine her Federal income tax liability for the relevant years. Ms. Burnett also refused to cooperate with the agent.

Afterwards, following respondent's expansion of the examination to include 1997, respondent completed "dummy" returns for petitioners that included their names, addresses, Social Security numbers, filing status, and exemptions. These returns did not include any amounts of income. Subsequently, on

December 21, 2000, respondent issued the notices of deficiency to petitioners for 1994, 1995, 1996, and 1997. In connection with these notices, respondent never issued to petitioners or to a third party any summons for information concerning petitioners, with the exception of a summons issued to Lubbock for information concerning Mr. Burnett's 1994 wages.

On the basis of an information return master file transcript for Mr. Burnett that listed that he had received in 1994 taxable wages totaling $19,913,[5] and independent supporting documentation as to those wages that respondent had requested and received from Lubbock, respondent determined in the notices of deficiency for 1994 that petitioners had failed to report taxable wages of $19,913 for that year. As to 1995, 1996, and 1997, respondent determined in the notices of deficiency for those years that Mr. Burnett had received unreported income in those years attributable to his ownership of the newspaper (newspaper income). The agent determined the amount of newspaper income by way of a four-step process, bearing in mind the fact that (1) petitioners had reported on their 1992 Federal income tax return (the last Federal income tax return that they had filed as owners of the newspaper) that the newspaper's gross receipts for that year were $100,736 and (2) Mr. Burnett had received during

_____

[5] The transcript referenced that these wages had been reported to Mr. Burnett and the Commissioner on a Form W-2, Wage and Tax Statement. That W-2 is not in the record.

some or all of the subject years Forms 1099-MISC, Miscellaneous Income, which appeared to have been for printing jobs performed for third parties. First, after driving by the headquarters of the newspaper, she purchased a recent (October 23, 1997) edition of the newspaper which she determined was representative of an entire year. Second, as to that edition, she measured the dimensions of all of the advertisements, counted all of the words in the classifieds, and applied the appropriate classified and advertising rates stated therein to calculate the newspaper's total advertising revenue for a single weekly edition. Third, she multiplied that amount by 52 (weeks) to arrive at an annual gross revenue of $178,230 for the newspaper. The agent did not include in her gross revenue calculation any other income realized by the newspaper such as subscription income. The annual subscription rate multiplied by the number of paid subscribers would have resulted in additional income of $24,833 in 1995, $29,000 in 1996, and $39,000 in 1997.

Fourth, in an effort to calculate petitioners' expenses relating to the annual gross revenue, the agent reviewed the expenses which petitioners had claimed for the newspaper on their 1992 tax return. She reduced the total amount of the 1992 expenses shown on the return by the wages and employment taxes included therein after determining that petitioners had not paid any wages or employment tax in 1995, 1996, or 1997. She

calculated the percentage of total expenses for each of the subject years to the corresponding annual gross revenue as 52 percent and determined that petitioners were allowed to deduct as business expenses for each year 52 percent of the year's annual gross revenue (i.e., 52 percent x $178,230 of annual gross revenue = $92,680 of allowable expenses). She concluded and determined that Mr. Burnett, as the sole proprietor of the newspaper, had received from the newspaper in each year unreported income of $85,550 ($178,230 - $92,680 = $85,550). She determined that both petitioners, by virtue of the fact that they lived in Texas, a community property State, were taxable on equal shares of that income. She determined that Mr. Burnett, by virtue of the fact that he was the newspaper's sole proprietor and publisher and that Ms. Burnett did not seem to be an active participant in that business, was liable for self-employment tax on his portion of the self-employment income.

## OPINION[6]

Petitioners alleged in their petition that the notices of deficiency were invalid because respondent failed to execute an involuntary return that met the definition of section 6020(b). Petitioners also alleged in their petition, and have argued

---

[6] Sec. 7491(a)(1) does not apply in this case. In addition to the fact that respondent's examination of petitioners' 1994, 1995, and 1996 taxable years commenced before July 23, 1998, the effective date of the section, petitioners have failed to cooperate with respondent as required by sec. 7491(a)(2)(B).

primarily through this proceeding, that they did not realize for the subject years the amount of taxable income determined in the notices of deficiency.  As to this allegation, petitioners have never denied during this proceeding that they had taxable income in those years but have simply argued that respondent has not proven the amounts of income.  Petitioners also alleged in their petition that they are entitled to personal exemptions, deductions, and business-related expense deductions not reflected in the notices of deficiency.  Petitioners called no witnesses at trial, opting instead to submit their case to the Court on the basis of the stipulated facts and exhibits and their limited cross-examination of the agent, the only witness who did testify at trial.

## I.  Use of Dummy Returns

Petitioners alleged in their petition that respondent's notices of deficiency are invalid because they were not based upon a "return" within the meaning of section 6020(b).[7]

---

[7] Section 6020(b) provides:

SEC. 6020(b).  Execution of Return by Secretary.--

(1) Authority of Secretary to execute return.--If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

(continued...)

According to petitioners, respondent must "make, execute, and file an involuntary return before there is a deficiency as defined by Congress". Here, petitioners allege, respondent has prepared only "dummy" returns as to the subject years.

We disagree with petitioners' allegation that the notices of deficiency are invalid for lack of a section 6020(b) "return". In accordance with firmly established law, respondent need not actually prepare a return in order to determine a deficiency in the tax of a taxpayer who has never filed a return for that year. Roat v. Commissioner, 847 F.2d 1379, 1381 (9th Cir. 1988); Hartman v. Commissioner, 65 T.C. 542, 545 (1975); see also Schott v. Commissioner, T.C. Memo. 1991-457. The mere fact that respondent may not have based petitioners' deficiency notices upon a return within the meaning of section 6020(b) does not for any year invalidate any of those notices.

II. Deficiency Determination

Respondent determined that petitioners were liable for taxes on the amount of income reconstructed by the agent. Petitioners argue that respondent's determination is arbitrary and erroneous. As to the wage income, petitioners argue, respondent failed to establish the correct amount of wages that Mr. Burnett received

---

[7](...continued)
        (2) Status of returns.--Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

from Lubbock.  As to the newspaper income, petitioners argue, respondent failed to prove:  (1) That the newspaper was an income-producing activity that was engaged in by petitioners and (2) that petitioners actually received income from the newspaper.

On the basis of the facts at hand, we agree with respondent that petitioners are liable for Federal income tax on the amount of reconstructed income.  As to the burden of proof, the Supreme Court has held that a notice of deficiency "has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong."  Welch v. Helvering, 290 U.S. 111, 115 (1933); see also United States v. Janis, 428 U.S. 433, 441 (1976); Helvering v. Taylor, 293 U.S. 507, 515 (1935).  This presumption "is not evidence itself and disappears upon the introduction of evidence to overcome it."  Pizzarello v. United States, 408 F.2d 579, 583 (2d Cir. 1969); see Compton v. United States, 334 F.2d 212, 216 (4th Cir. 1964); Ky. Trust Co. v. Glenn, 217 F.2d 462, 465 (6th Cir. 1954).  "If the taxpayer rebuts the presumption by showing that it is arbitrary and erroneous, the presumption disappears."  Anastasato v. Commissioner, 794 F.2d 884, 887 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101; see Helvering v. Taylor, supra at 515.  Whereas the Courts of Appeals may vary on the effect upon the burden of proof when the presumption does disappear, United States v. Janis, supra at 441, the law of the Fifth Circuit, the

circuit to which an appeal of this case lies, provides that "the burden [in such a case] shifts to the government to prove the correct amount of any taxes owed." Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991), affg. in part, revg. in part, and remanding T.C. Memo. 1990-68; Carson v. United States, 560 F.2d 693, 696 (5th Cir. 1977).

As to the wage income, we believe that respondent's calculation of Mr. Burnett's wage income for 1994 stands on solid ground and is neither arbitrary nor erroneous. First, the parties have stipulated (and we have found as a fact) that Mr. Burnett was employed by and received wages from Lubbock during 1994. Second, respondent derived the $19,913 from his master file transcript that indicated that Lubbock had issued to Mr. Burnett a Form W-2, Wage and Tax Statement, reporting that it had paid to him during 1994 wages of that amount. Third, respondent requested and received supporting documentation from Lubbock which indicated that it had paid to Mr. Burnett during 1994 that amount of wages. Whereas petitioners ask the Court to find that Lubbock paid Mr. Burnett only $16,177 of wages during 1994, i.e., the amount that he received during the 1993/1994 school year, the record disproves such a finding. The record indicates (and we have found as a fact) that Lubbock paid to Mr. Burnett wages after the 1993/1994 school year. We sustain respondent's determination as to the unreported wages. In so doing, we note

that respondent apportioned one-half of these wages to each petitioner to reflect the community property law of Texas and that petitioners have made no objection to this apportionment.

As to the newspaper income, petitioners' sole argument is that respondent has neither connected them to the receipt of income from the newspaper nor established the amount of any such income. Petitioners assert primarily that respondent's determination of this unreported income was not the product of a thorough and complete examination but rested on a naked assessment. In this regard, petitioners observe, respondent's income calculation stemmed solely from one edition of the newspaper, and respondent never attempted to verify his income recalculation by using another method such as the net worth method. Petitioners assert secondly that respondent never investigated whether the calculated amount of advertising income should have been reduced by virtue of, for example, the four consecutive issue discount or a complimentary (free) placement.

On the basis of the facts herein, we are satisfied with respondent's reconstruction of petitioners' unreported income from the newspaper. Mr. Burnett was the sole proprietor and publisher of the newspaper, which both on its face (the listing of subscription, advertising, and classified rates) and on the basis of history (the 1992 tax return), was easily seen to be an income-producing activity. Because petitioners did not file

Federal income tax returns reporting any income from that activity, nor any income at all, respondent was forced to reconstruct their income for the subject years. With a proper determination of petitioners' income in sight, the agent invited petitioners to meet with her and bring with them their primary financial records so that such a proper determination of petitioners' income could be made directly from those records. When petitioners chose not to cooperate with the agent, she was forced to determine their income by reconstructing it indirectly through secondary records. Congress has given respondent broad discretion to use any method that he believes clearly reflects income when he is forced to reconstruct a taxpayer's income. See Estate of Bernstein v. Commissioner, T.C. Memo. 1956-260, affd. 267 F.2d 879 (5th Cir. 1959).

Here, the method of reconstruction utilized by the agent was reasonable. The agent followed the four-step approach described above and arrived at numbers, which, although not precise, were to our minds a sufficient estimation of petitioners' income from the newspaper. Whereas respondent's determination of the newspaper's annual gross revenue did not directly reflect any discounted or complimentary advertisements placed in the October 23, 1997, edition, petitioners, to the extent they believed they were entitled to any such discount, could have provided (either during the examination or during this proceeding) documentation

or testimony to support an alleged discount. We note, however, that even if they did, the agent's determination of annual gross revenue was, by her own admission, consciously and conservatively drawn low by omitting income such as the subscription revenue so as to negate any claim that the determined revenue was overestimated.[8] Given the additional fact that the burden of demonstrating any unfairness or inadequacy in a method used to reconstruct income is upon the taxpayer, e.g., Woodall v. Commissioner, 964 F.2d 361, 364 (5th Cir. 1992), affg. T.C. Memo. 1991-15, and that petitioners have to our minds failed to carry this burden, we sustain respondent's determination as to this issue. In so doing, we are mindful of Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968), affg. T.C. Memo. 1966-81, wherein the court stated:

> We recognize that the absence of adequate tax records does not give the Commissioner carte blanche for imposing Draconian absolutes. But such absence does weaken any critique of the Commissioner's methodology.
>
> Arithmetic precision was originally and exclusively in * * * [the taxpayer's] hands, and he had a statutory duty to provide it. He did not have to add or subtract; rather, he had simply to keep papers and data for others to mathematicize. Having defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should he be overly chagrined at

---

[8] The agent was also mindful that her calculation of gross revenue did not take into account any revenue that petitioner may have received from the magazine.

        * * * [a] Court's reluctance to credit every word of
        his negative wails.  [Citations omitted.]

We also note that respondent apportioned one-half of the

newspaper income to each petitioner to reflect the community

property laws of Texas and that petitioners state no objection to

this apportionment.  Nor have petitioners ever objected to

respondent's determination that the newspaper income attributable

to Mr. Burnett was self-employment income for which he was liable

for self-employment tax.[9]  We sustain that determination as

well.[10]

III.  Sec. 6651 – Failure To File

    Respondent alleged in answer (and argues herein) that

petitioners are liable for additions to tax under section 6651(a)

---

[9] Mr. Burnett was actually liable for self-employment tax on all of the newspaper income.  Although one-half of an individual's self-employment income may be attributed to his or her spouse under community property law, sec. 1402(a)(5) requires that any self-employment tax payable on that income be computed by treating all of the income as that of the husband "unless the wife exercises substantially all of the management and control of * * * [the underlying] trade or business", in which case all of the income is treated as that of the wife.  See Charlton v. Commissioner, 114 T.C. 333, 337 (2000).  Because respondent has not made any claim to more self-employment tax than determined in the notices of deficiency, we do not redetermine the greater amount.  Sec. 6214(a).

[10] We also reject petitioners' allegation that they are entitled to personal exemptions, deductions, and business-related expense deductions not reflected in the notices of deficiency. Rule 142(a)(1); see also Ryback v. Commissioner, 91 T.C. 524, 566 (1988) (issue not argued on brief, as was the case here with respect to petitioners and their claim to these items, is considered conceded).

for 1995, 1996, and 1997.  Section 6651(a)(1) imposes an addition to tax for failure to file a return timely unless the taxpayer shows that the failure was due to reasonable cause and not willful neglect.  Respondent determined in the notices of deficiency for 1995, 1996, and 1997 that petitioners were liable for additions to taxes under section 6651(f).  Section 6651(f) applies when a failure to file a return is fraudulent.

The parties dispute who has the burden of proof as to this issue.  We may assume arguendo that the burden lies with respondent, on the grounds that respondent's allegation in answer that petitioners are liable under section 6651(a) is a "new matter" within the meaning of Rule 142(a)(1).

We are persuaded by the record that respondent has met his burden of proof.  Petitioners have never filed a 1995, 1996, or 1997 tax return, and their sole reason for not filing those returns is that they are not individuals subject to tax.  We sustain respondent's determination on this issue.[11]

IV.  Section 6654 – Failure To Pay Estimated Income Tax

Respondent determined that petitioners underpaid their estimated Federal income taxes and are liable for additions to tax under section 6654.  Section 6654 automatically applies to

_____

[11] Respondent also determined that petitioners are liable for additions to their 1994 tax under sec. 6651(a).  As to these additions, for which petitioners have the burden of proof, we also sustain respondent's determination for reasons similar to those just stated as to the other years.

any underpayment of estimated taxes, unless petitioners can prove that they meet one of the exceptions set forth in section 6654(e).  See Recklitis v. Commissioner, 91 T.C. 874, 913 (1988); Reichenbach v. Commissioner, T.C. Memo. 1998-42; Tillman v. Commissioner, T.C. Memo. 1996-8.  Because petitioners have not shown that any one of these exceptions applies, we sustain respondent's determination on this issue.

All arguments made by petitioners but not discussed herein have been rejected as without merit.[12]  Accordingly,

Decision will be entered

for respondent.

---

[12] Many of petitioners' submissions to this Court contain frivolous and groundless tax protestor rhetoric that has been rejected repeatedly by this and every other Court that has considered it.  We admonish petitioners that advancing similar arguments in this Court in the future may subject them to a penalty under sec. 6673(a) of up to $25,000.