BAXTER EUGENE BIGGS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Biggs v. Commissioner
Docket No. 6750-83.
United States Tax Court
T.C. Memo 1985-303; 1985 Tax Ct. Memo LEXIS 320; 50 T.C.M. (CCH) 203; T.C.M. (RIA) 85303; June 25, 1985. Baxter Eugene Biggs, pro se. William V. Spatz, for the respondent JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: In the statutory notice of deficiency, respondent determined the following income tax deficiencies and additions *321 to tax: Additions to Tax: Taxable Year Ended
Deficiency
Sec. 6653(b) [1]
Sec. 6654
December 31, 1978
$6,783.82
$3,391.91
$216.00
December 31, 1979
1,980.00
990.00
70.00
December 31, 1980
2,346.52
1,173.26
150.00
In his amended answer, respondent has asserted, in the alternative to the imposition of the fraud addition under section 6653(b), additions against petitioner under section 6653(a) (the negligence addition) and under section 6651 (the delinquency addition). Respondent, at the time of the trial, conceded $6,415.64 of the $6,783.82 deficiency determined against petitioner for 1978 in the statutory notice, with the result that the amount of the deficiency in dispute herein for 1978 is $368.18. [2]
The issues for decision are: (1) whether respondent correctly *322 determined that petitioner received wage income and income from his sole proprietorship in the amounts of $1,743.00, $12,333.75 and $17,255.52 for taxable years 1978, 1979 and 1980; (2) whether respondent correctly determined that petitioner is liable for the additions to tax for failure to pay estimated tax, as provided under section 6654; (3) whether for the years in issue petitioner is liable for the additions to tax for fraud, as provided under section 6653(b); (4) whether, in the event that petitioner is held not liable for the addition to tax provided under section 6653(b), petitioner is liable for the addition to tax for delinquent filing under section 6651(a); (5) whether, in the event that petitioner is held not liable for the addition to tax provided under section 6653(b), petitioner is liable for the addition to tax for negligence, as provided under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits thereto are incorporated herein by this reference. Petitioner, Baxter Eugene Biggs, resided in Lake Worth, Florida, at the time of the filing of the petition. Petitioner, at time of *323 trial, was fifty-three years of age. Prior to engaging in his current profession of plumbing, petitioner served in the Navy for seventeen years. Petitioner has worked as a plumber for approximately ten years. For taxable years 1976 and 1977, petitioner and his wife, Charline D. Biggs, resided in Fort Lauderdale and filed joint Federal income tax returns. These returns included Schedules C, on which the results of petitioner's sole proprietoriship, Baxter's Plumbing Services, were reported. The 1976 return showed income tax and self-employment tax liabilities totalling $2,297.00. The 1977 return reported income tax and self-employment tax liabilities totalling $2,958.00. Petitioner operated Baxter's Plumbing Services, a sole proprietorship, through February, 1978. Petitioner and his wife sold their Fort Lauderdale home in April, 1978, and moved to the Pacific Northwest. [3] Petitioner filed no Federal income tax return for 1978 and paid no Federal income tax or self-employment tax in that year. *324 In 1979, petitioner was employed by Hilltop Plumbing of Gladstone, Oregon, and received wages of $3,003.00. Petitioner also received wages of $9,330.75 in 1979 as a result of his employment by A Beehive Enterprise Co. of Gladstone, Oregon. Petitioner filed Forms W-4 with both employers that stated that he was "exempt" from Federal income tax withholding. Petitioner was employed by A Beehive Enterprise Co. of Gladstone, Oregon during part of 1980, and received $5,902.00 for his services. After returning to Florida and settling in Lake Worth sometime prior to May, 1980, petitioner worked for J.C. Plumbing Co., Inc. of Lake Worth, Florida, and received wages therefrom in the amount of $3,900.00 during 1980. Petitioner also worked for O.D. Burns, Inc. of West Palm Beach, Florida in 1980 and received $4,570.00 for his services. Petitioner filed Forms W-4 with all three employers stating that he was "exempt" from the withholding requirement. Petitioner re-opened his sole proprietorship in July, 1980, and operated it through December, 1981. On or about May 12, 1980, petitioner mailed a Form 1040A for taxable year 1979 to the Internal Revenue Service Center in Atlanta, *325 Georgia. The Form 1040A was signed by petitioner, but contained no financial information. In lieu of reporting the amounts of wages received and adjusted gross income for the year, petitioner inserted the words "OBJECT: SELF INCRIMINATION." A hand-written, one-page "addendum" was attached to the return, citing various authorities as grounds for asserting the Fifth Amendment privilege. By letter dated May 20, 1980, from the Atlanta Internal Revenue Service Center, petitioner was advised that the Form 1040A as filed did not constitute a "return" for Federal income tax purposes. Petitioner thereafter filed a second Form 1040A. The second Form 1040A was dated May 28, 1980, was signed by petitioner, contained the same Fifth Amendment objections as the first Form 1040A, and provided no financial information. Attached to the second Form 1040A were thirteen pages of tax protestor literature on the right to claim the Fifth Amendment privilege on an individual Federal income tax return. [4] Petitioner paid no income tax for 1979. Petitioner filed no return for 1980 and paid no Federal income *326 tax or self-employment tax in that year. In February of 1981, respondent's Collection Division referred the examination of petitioner's 1979 income tax liability to Revenue Agent Paula Wiggins. [5] The Collection Division had been working on petitioner's 1977 tax liability, and in the course of its investigation, discovered that petitioner had not filed a return for 1979. Upon checking respondent's records, Revenue Agent Wiggins discovered that no returns had been filed for 1978 and 1980. On May 11, 1981, Revenue Agent Wiggins advised petitioner and his wife by letter that their income tax liabilities for the years 1978 through 1980 were being examined, and that an appointment had been scheduled for 1:00 p.m. on May 28, 1981 at the West Palm Beach IRS office. Revenue Agent Wiggins also requested that petitioner and his wife bring various specified books and records to the meeting. In response, petitioner wrote to Revenue Agent Wiggins on May 12, 1981, advising her to refer to "the files on this case *327 that have their origin dating back to early 1979. . . ." Petitioner advised Revenue Agent Wiggins that he had been in contact with seven different IRS offices and that he was "unable to add anything to what your many offices and agents already know." Revenue Agent Wiggins wrote back, confirming the May 28 appointment and requesting that petitioner bring any returns, closing agreements, collection payment schedules and any IRS notices concerning taxable years 1978 through 1980, in addition to the previously requested books and records. Petitioner did not appear for the May 28 appointment. Petitioner first provided information regarding the years 1978 through 1980 in August, 1983, when the matter was before respondent's Appeals Division. The information provided consisted of a summary, prepared by petitioner, of what he claimed to be deductible expenses. Petitioner did not provide any documentation to support his claimed deductions, despite the fact that he was specifically asked to do so by Appeals Officer Frank Andreacchi in a letter dated August 11, 1983. The statutory notice was issued to petitioner on April 4, 1984. Throughout the examination and appeals level, *328 informal and formal discovery periods and the trial, [6] petitioner failed to produce any books or records with regard to his sole proprietorship.The excuses he has given at various times have included the following: (1) the records were lost in a flood of unknown date; (2) the records were given to an employee of respondent named Mr. Anderson in Yakima, Washington in April 1978; (3) the records were left in the possession of an unnamed bookkeeper who died and whose records could not be located; (4) his records were lost in transit between the Pacific Northwest and Florida; (5) he gave them to an employee of respondent, in the state of Washington whom he identified as "William Campbell"; and (6) the records are unavailable because the statute of limitations had expired as to them. In a telephone discussion with Revenue Agent Wiggins concerning his refusal to produce records, petitioner acknowledged that he was aware of a criminal proceeding against a tax protestor named William F. Pforr, but stated that he had better cases than Pforr and that he would see Revenue Agent Wiggins in court. *329 Because of petitioner's refusal to provide any records regarding his sole proprietorship, Revenue Agent Wiggins was Forced to employ an indirect method of income reconstruction. Revenue Agent Wiggins computed petitioner's 1978 sole proprietorship income by computing the average of the net profits from the business reported on petitioner's returns for 1976 and 1977, and prorating that figure to reflect one month's business activity. As to 1980, the bank records summoned by Revenue Agent Wiggins showed no checks deposited in 1980 from petitioner's sole proprietorship despite the fact that petitioner operated the business for the last six months of the year. [7] Revenue Agent Wiggins contacted petitioner's plumbing suppliers, and found that petitioner had purchased $1,441.51 of supplies in 1980. Having been advised by the local plumbers' union that a 3-to-1 markup on plumbing supplies was generally used by plumbers in the area, Revenue Agent Wiggins used the percentage markup method to determine the income derived from petitioner's sole proprietorship for 1980. *330 When petitioner learned of the fact that Revenue Agent Wiggins had contacted his suppliers, he threatened to sue one of them, R.W. Farmer Supply Co., if it cooperated with respondent or gave respondent any information regarding petitioner. Sometime after 1980, petitioner altogether discontinued the use of bank accounts. Petitioner filed a Form 1040A for 1981 on or about March 29, 1982, that disclosed no financial information but asserted the Fifth Amendment privilege. On May 1, 1982, petitioner received a letter from the Atlanta Service Center advising him that the Form 1040A did not constitute a return. Petitioner wrote back on May 19, 1982, advancing tax protestor arguments in support of his right to assert the Fifth Amendment privilege. On or about April 6, 1983, petitioner filed a 1982 Form 1040 that again provided none of the required financial information but asserted his right to claim the Fifth Amendment privilege. After being notified that the 1982 Form 1040 as filed was not acceptable as a return, petitioner wrote to the Atlanta Service Center on May 23, 1983, citing sections of the Internal Revenue Manual, as support for his claim to the Fifth Amendment *331 privilege. The closing paragraph of the May 23 letter reads as follows: I do not wish to extend this reply with numerous legal decisions of the Supreme Court or other courts. I know that I have acted in good faith and with respect towards the IRS. All of you have my deepest sympathy in that your path in life has led into the infamy of tax collecting, but I pray that God will deliver each of you just as Christ did for Mathew [sic]. I assure you of my sincerity and that I hold no malice to those in your profession. 10 OPINION The first issue for decision is whether respondent correctly determined that petitioner received wage income and income from his sole proprietorship in the amounts of $1,743.00, $12,333.75 and $17,255.52 for taxable years 1978, 1979 and 1980. The parties have stipulated that petitioner received wages in the amounts of $12,333.75 and $14,372.50 during 1979 and 1980. These same amounts were included in 1979 and 1980 gross income in the statutory notice. Petitioner alleged in the petition that none of the compensation he received constituted income because the compensation was received in an equal exchange for labor which is a species of property. *332 Prior to trial, petitioner took the position in his Reply to Amended Answer and in his Response to Interrogatories of Respondent that the compensation he received did not constitute "wages" or "taxable income or increase." Petitioner abandoned this position at trial. Respondent's determination as to the amount of taxable wage income received by petitioner in taxable years 1979 and 1980 is therefore sustained. Respondent determined that petitioner realized net income from the operation of his sole proprietorship in taxable years 1978 and 1980 in the respective amounts of $1,743.00 and $2,883.02. With respect to each year, the amounts determined to be income were derived by use of income reconstruction methods. Respondent computed petitioner's 1978 income by averaging his net profits from the business reported on his 1976 and 1977 returns and prorating the average to reflect one month's operation of the business in 1978. Petitioner's 1980 income was reconstructed by the use of the percentage mark-up method, viz., by applying the percentage mark-up customarily used by plumbers in the area to the costs of supplies purchased by petitioner, as determined from the information *333 received by petitioner's suppliers. Petitioner maintains, with respect to 1978, that he derived no income from his plumbing business, which he claims was in dire financial straits at the time. While admitting at trial that no formal bankruptcy proceeding or any other creditor proceedings had been instituted against him at the time, petitioner argues that his self-prepared summary [8] demonstrates that expenses greatly exceeded receipts and that therefore he received no income. In testifying as to the nature of these expenses, petitioner admitted that he paid himself a "salary" during the operation of the business in 1978.Petitioner testified that he could document all the expenses claimed. Despite the fact that the Court ordered petitioner to produce his records and ordered that the record be kept open to afford petitioner the opportunity to comply, petitioner has not produced a shred of evidence to support any of his claims. There is no dispute herein that *334 petitioner operated his plumbing business during the early part of 1978. In view of petitioner's refusal to produce any records of the business, we find that respondent's method of income reconstruction was reasonable and is entitled to the presumption of correctness. Petitioner having failed to shoulder, let alone satisfy, his evidentiary burden of proving respondent's determination erroneous, respondent's determination must be sustained. As to respondent's use of the percentage mark-up method in determining petitioner's 1980 income, we note that this method of income reconstruction has met with judicial approval on several occasions. Bollella v. Commissioner,374 F.2d 96 (6th Cir. 1967); Bernstein v. Commissioner,267 F.2d 879 (5th Cir. 1959); Dagner v. Commissioner,T.C. Memo. 1976-121, affd. in an unpublished order 588 F.2d 830 (6th Cir. 1978). We find respondent's use of the method to be reasonable under the circumstances of this case, particularly in view of the facts that there is no dispute that petitioner operated *335 the business for the last six months of 1980, that petitioner failed to produce any business records, that he operated the business on a cash basis, and that he threatened legal action against one supplier who provided respondent with information. Respondent's determination is accordingly entitled to the presumption of correctness. Petitioner having failed to meet his burden of overcoming the presumption, respondent's determination must stand. It follows that respondent correctly determined petitioner's income for the years in issue, that respondent correctly determined petitioner's tax liabilities for 1978, 1979 and 1980. [9]
Petitioner also alleged that respondent erred in determining that the addition to tax provided under section 6654 should be imposed against petitioner. Under section 6654, an addition to tax is automatically imposed *336 where an individual underpays his estimated tax. Sec. 6654(a). Petitioner failed to pay any estimated tax and, through the filing of false withholding certificates, arranged for no taxes to be withheld on his taxable wages for the years at issue. Clearly, none of the mechanical exceptions to the addition provided are available, and therefore respondent's determination must stand. We turn then to respondent's determination that the fraud addition under section 6653(b) should be assessed against petitioner. Section 6653(b) imposes an ad valorem civil addition, equal to 50% of the underpayment, [10] "if any part of an underpayment * * * is due to fraud." Fraud, for the purposes of section 6653(b), means "an actual, intentional wrongdoing, and the intent required is the specific purpose of evading a tax believed to be owing." Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941). *337 The burden of proving that some part of an underpayment for each year was due to fraud is on respondent, a burden that is only satisfied by clear and convincing evidence. Sec. 7454(a); Rule 142(b). The existence of fraud is a factual question that can only be resolved by consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Although fraud is never presumed, requiring instead affirmative proof, circumstantial evidence may constitute sufficient proof of fraud. Spies v. United States,317 U.S. 492 (1943); Beaver v. Commissioner,55 T.C. 85, 92 (1970). Hence, the taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). After due consideration of the entire record, we are persuaded that respondent has satisfied his evidentiary burden in this case. Petitioner was unquestionably aware of his legal duty to file a return that discloses information sufficient *338 to compute his tax, as demonstrated by his compliance with that duty for taxable years prior to those in issue. Petitioner also knew that any wages received as an employee and any net profit from his sole proprietorship were reportable income. Petitioner, however, chose to file no returns for 1978 and 1980 and to file a form that did not constitute a return for 1979. [11]
Despite petitioner's incredible statements at trial to the contrary [12], we think it clear that petitioner was fully aware that his wages were subject to income tax withholding but nevertheless falsely claimd that he was exempt on *339 the Forms W-4 filed in 1979 and 1980. As a result of the false Forms W-4 filed by petitioner, no tax was withheld from his compensation during 1979 or 1980. A pattern of nonfiling, when coupled with affirmative evidence of intent to defraud, warrants imposition of the addition to tax for fraud. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Grosshandler v. Commissioner,75 T.C. 1, 19 (1980).The filing of false withholding certificates has also been held on numerous occasions to be evidence of fraud. Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Rowlee v. Commissioner,80 T.C. 1111, 1125 (1983); Habersham-Bey v. Commissioner,78 T.C. 304, 313 (1982). Thus, we hold that the failure to file returns for 1979 and 1980 and the filing of false Forms W-4 with respect to those years establish that the underpayment of tax for each of those years was due *340 to fraud. With respect to 1980, our conclusion that the underpayment of tax for that year was due to fraud is further supported by petitioner's actions to conceal the income he received in 1980 from his sole proprietorship. Specifically, petitioner's threat to sue his supplier for providing information to respondent and his implausible excuses for not producing records clearly evidence his intent to evade a tax that he knew was due. We also believe that the record supports the imposition of the fraud addition with respect to taxable year 1978. Petitioner filed no return for that year despite the facts that he operated his plumbing business for part of that year and that he clearly had knowledge, as established by his history of filing proper returns, of his duty to report the financial results of his enterprise. Petitioner has failed to produce any books or records for 1978, proferring instead, throughout respondent's investigation and the trial of this case, various implausible excuses. Our determination that petitioner's conduct was all but a pattern of behavior directed at concealing his noncompliance with his statutory duties is bolstered by his persistence in filing "Fifth *341 Amendment" tax protestor returns in subsequent years and by his often hostile refusal to cooperate with respondent's employees throughout the examination of this case. Accordingly, we hold that respondent has satisfied his burden, and that the imposition of the fraud addition as to each of the years in issue must stand. In view of our determination with respect to the addition under section 6653(b), we need not consider the alternative additions determined against petitioner by respondent. Sec. 6653(b), (d). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue code of 1954, as amended and as in effect during the years at issue. ↩
2. The decrease in the 1978 deficiency determined by respondent results in a corresponding reduction (from $3,391.91 to $184.09) in the section 6653(b) addition determined for 1978. Similarly the section 6654↩ addition is reduced to $70.00.
3. Petitioner testified at trial that he first relocated to Cle Elum, Washington, and thereafter moved to Kittitas, Washington, and finally to Gladstone, Oregon. Petitioner's testimony was vague as to the dates of his various moves.↩
4. On both the first and the second Forms 1040A, petitioner claimed two personal exemptions.↩
5. By the time of trial, Ms. Wiggins had married and was known as Ms. Simmons. For the purposes of this opinion, she will be referred to as Revenue Agent Wiggins.↩
6. At the conclusion of the trial, the Court ordered that the record remain open for sixty days to allow petitioner the opportunity to produce his records, which he subsequently failed to do.↩
7. Revenue Agent Wiggins had learned from the Palm Beach County Licensing Bureau that petitioner had applied for a license to engage in a plumbing business in 1980.↩
8. The summary, which was not prepared, contemporaneously, is obviously not probative of whether any of the amounts contained therein were paid. Askew v. Commissioner,T.C. Memo. 1985-100↩.
9. Respondent made a number of other adjustments in the statutory notice, none of which were addressed by petitioner at trial and with respect to which petitioner introduced no evidence. Accordingly, these other issues are deemed abandoned.↩
10. Section 325(a) of Public Law No. 97-248, 96 Stat. 616, amended section 6653(b)↩ to provide that the civil fraud addition shall include an additional amount equal to 50 percent of the interest payable under section 6601 on that portion of the underpayment that is attributable to fraud. The increased addition only applies to taxes the last day prescribed by law for payment of which is after September 3, 1982, and therefore does not apply herein.
11. Petitioner testified that he believed at all relevant times that he was under criminal investigation by respondent, and therefore failed to file returns in order to protect himself against self-incrimination. The burden of proving that the danger of self-incrimination exists is on the claimant of the Fifth Amendment privilege. Steinbrecher v. Commissioner,712 F.2d 195, 198↩ (5th Cir. 1983). Petitioner has produced no evidence to substantiate his claim, and, indeed, a reasonable inference from the record is that his "belief" was wholly fabricated.
12. Petitioner testified that he was not aware, and doesn't remember, if the Navy required a withholding certificate.↩