T.C. Memo. 1998-206


UNITED STATES TAX COURT


DARRYL SHAWN AND MELONEE YEVETTE BUNDRIDGE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20355-95.                    Filed June 15, 1998.


Darryl Shawn Bundridge, pro se.

Lisa Kuo, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, Judge:  Respondent determined a deficiency of $4,976 and an accuracy-related penalty of $995 in petitioners' Federal income tax for 1992, and a deficiency of $8,355 and an accuracy-related penalty of $1,671 in petitioners' Federal income tax for 1993.

The parties have agreed to certain adjustments for the taxable years 1992 and 1993. The following issues remain for decision:

(1) Whether petitioners are entitled to deduct rental expenses for 1992 in excess of those conceded by respondent.

(2) Whether petitioners are entitled to deduct mileage expenses for 1992 and 1993 in excess of those conceded by respondent.

(3) Whether petitioners' cost of goods sold for 1993 for their business of Hi Fidelity Record was correctly reported on Schedule C of their amended Federal income tax return.

(4) Whether the markup percentage used by respondent for the goods sold was correct in determining petitioners' gross receipts for 1992 and 1993.

(5) Whether petitioners are liable for the accuracy-related penalties under section 6662(a)[1] for 1992 and 1993.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein. Petitioners resided in Rialto, California, when their petition was filed.

---

[1] All section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners were married during 1992 and 1993. They were divorced in 1996. During 1992 and 1993, petitioner Darryl Bundridge worked full time as a Los Angeles Police Officer. During 1991 and 1993, petitioner Melonee Bundridge worked at Atchison Topeka & Santa Fe Railway.

In 1989, petitioners started their Schedule C business, known as Hi Fidelity Record (also known as High Fidelity Records). Hi Fidelity Record sold records, cassette singles, cassettes, compact discs, batteries, and blank cassette tapes in the retail market in Rialto, California. As of January 1992, petitioners operated the business out of rented space from Hub Properties. Later, on April 29, 1992, they relocated to Rialto Discount Mall.

Petitioners bought their supply of records, cassettes, and compact discs from Abbey Road Distributors (Abbey Road), which was located in Los Angeles, California. Petitioners made these purchases at Abbey Road's pickup counter in Los Angeles and paid for them mainly in cash.

Petitioners filed a U.S. Individual Income Tax Return, Form 1040, for the taxable year 1992. On Schedule C, Profit or Loss From Business, of their 1992 return, petitioners reported the following in regard to Hi Fidelity Record:

| | |
|---|---|
| Gross Receipts: | $6,100 |
| Expenses: | |
| Advertising | 125 |

| | |
|---|---:|
| Car and truck | none |
| Insurance | 125 |
| Office expense | 75 |
| Other business property rent | 16,000 |
| Repairs and maintenance | 2,441 |
| Supplies | 1,200 |
| Tax and licenses | 263 |
| Utilities | 851 |
| Business phone | 950 |
| Water | 200 |
| Page phone | 100 |
| Alarm | 305 |

In the notice of deficiency, respondent disallowed all expenses claimed on the Schedule C for 1992.

Petitioners filed a U.S. Individual Income Tax Return, Form 1040, for the taxable year 1993. They filed an Amended U.S. Individual Income Tax Return, Form 1040X, for the taxable year 1993, stating that Schedule C had been changed due to an inter-office bookkeeping audit. On Schedule C of their 1993 return and their amended 1993 return, petitioners reported the following for Hi Fidelity Record:

| | Original Return | Amended Return |
|---|---:|---:|
| Gross Receipts: | $17,439 | $102,000 |
| Expenses, which included: | | |
| Advertising | none | 1,000 |
| Car and truck | 5,600 | 5,600 |
| Insurance | none | 2,200 |
| Office expense | 84 | 184 |
| Other business property rent | 11,352 | 11,352 |
| Repairs and maintenance | none | none |
| Supplies | 10,500 | 61,250 |
| Tax and licenses | 154 | none |
| Utilities | none | 5,000 |
| Business phone | 687 | none |

| | | |
|---|---|---|
| Water | none | none |
| Page phone | none | none |
| Alarm | none | none |

In the notice of deficiency, respondent disallowed all expenses claimed on the Schedule C for the taxable year 1993.

Petitioners' 1992 and 1993 Federal income tax returns were prepared by Bernadette Henderson of Green's Tax Service, and their amended 1993 return was prepared by Lee Green of Green's Tax Service.

At the end of the trial, respondent orally moved for leave to conform the pleadings to the evidence under Rule 41(b). Petitioners did not object. We took the motion under advisement.

OPINION

As a preliminary matter, we consider whether respondent's motion to conform the pleadings to the evidence should be granted.

Respondent's motion is for leave to file an amended answer for an increased deficiency and penalty. The deficiency for 1992 would be increased from $4,976 to $5,846 resulting from the correction of the gross receipts to $48,677 and the cost of goods sold to $29,236.[2] The penalty for 1992 would be increased from $995 to $1,169.

---

[2] On their 1992 Schedule C, petitioners claimed $1,200 as the amount of supplies. The parties agreed that the goods purchased (cost of goods sold) for 1992 was $29,236. This was based on the total purchases from Abbey Road.

Respondent moved pursuant to Rule 41(b) to increase the deficiency.  See sec. 6214(a).  Rule 41(b)(1) provides that

> Issues Tried by Consent:  When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.  The Court, upon motion of any party at any time, may allow such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues, but failure to amend does not affect the result of the trial of these issues.

Whether a motion seeking an amendment should be allowed is within the sound discretion of the Court.  Commissioner v. Estate of Long, 304 F.2d 136 (9th Cir. 1962).  If there is unfair surprise or prejudice to the opposing party, then the motion to amend should be denied.

We do not find that granting respondent's motion to amend would result in unfair surprise to petitioners.  In the notice of deficiency, respondent listed an adjustment for "Gross Receipts Sch. C." for 1992 and 1993, but respondent did not state a dollar adjustment.  On the schedule B of the notice of deficiency, the explanation for this adjustment stated that "[t]his issue has been opened for examination and can still be audited."

Petitioners did not object to respondent's oral motion to conform the pleadings to the evidence.  Further, evidence necessary to decide the issue of the additional deficiencies was presented at trial.  Petitioners did not object to testimony regarding this matter and even questioned the witnesses about it.  Petitioners' pretrial memorandum included the following issues

for trial: (1) Inventory markup percentage for 1992; (2) the amount of inventory unsold at the end of 1992; and (3) gross income for 1992. In view of petitioners' actions, we find that the issues were tried with their implied consent.

Accordingly, we will grant respondent's motion to amend his answer to conform to the evidence so as to assert an increased deficiency and penalty for 1992. Respondent has the burden of proving, however, that petitioners are liable for the increased deficiency and penalty. Rule 142(a).

Issue 1. Rental Expenses

Deductions are matters of legislative grace, and "only as there is clear provision therefor can any particular deduction be allowed." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 162(a) provides in part that

SEC. 162(a). In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including--

* * * * * * *

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

In 1992, petitioners claimed a deduction for rental expenses in the amount of $16,000. Respondent has agreed that petitioners were entitled to deduct $8,374 of the $16,000 claimed deduction. Respondent estimated the monthly rental payment to Hub Properties to be $1,350 on the basis of the prior lease contract adjusted for an estimated increase. Petitioners presented no substantiation to reflect the actual payments to Hub Properties. Respondent allowed 3 months (January to March of 1992) of rental expenses paid to Hub Properties but disallowed any allowance for April. On April 29, 1992, petitioners relocated to Rialto Discount Mall, renting space from April 29 through December 31, 1992. Respondent allowed 6 months of rent based on the amounts substantiated by checks. The following summarizes respondent's computations:

| Hub Properties: | January | 1992 | $1,350 |
|---|---|---|---|
| (no substantiation) | February | 1992 | 1,350 |
| | March | 1992 | 1,350 |
| | April | 1992 | -0- |
| Rialto Discount Mall | Checks of | | [1]952 |
| | | | 728 |
| | | | 728 |
| | | | 728 |
| | | | 800 |
| | | | 388 |
| Rental expenses allowed | | | $8,374 |

[1] The full amount of the check was $1,680, but $728 of the payment was the security deposit.

Petitioners argue that respondent should have allowed the April payment to Hub Properties and the missing two monthly

payments to Rialto Discount Mall.  For the months disallowed, petitioners provided no documentary evidence that the claimed expenses were paid and provided no other evidence to corroborate their claim.  Therefore, we conclude that petitioners failed to substantiate that the claimed expenses were paid or incurred. Thus, petitioners are not entitled to rental expenses in excess of those allowed by respondent in 1992.

Issue 2.  Mileage Expenses

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including traveling expenses while "away from home" in the pursuit of a trade or business.  A deduction for transportation expenses is also allowed for local travel from one business location to another.  Secs. 162(a)(2), 274.  Both traveling expenses and transportation expenses are subject to the substantiation requirements of section 274(d), which provides in part that

> SEC. 274(d).  Substantiation Required.--No deduction or credit shall be allowed--
>
> (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),
>
> *     *     *     *     *     *     *
>
> (4) with respect to any listed property (as defined in section 280F(d)(4)[3]),

---

[3]  Sec. 280F(d)(4)(A)(i) provides that listed property means
(continued...)

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * *, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. * * *

In 1992, petitioners did not claim a deduction for car and truck expenses on their Schedule C. Respondent has agreed that petitioners were entitled to deduct $1,680 for car and truck expenses in that year. In 1993, petitioners claimed a deduction for car and truck expenses in the amount of $5,600. They also claimed the same $5,600 on their amended 1993 return. Respondent has agreed that petitioners were entitled to $1,680 of the $5,600 claimed for car and truck expenses in 1993.

In allowing $1,680 for car and truck expenses in both 1992 and 1993, the revenue agent based his conclusion on the number of trips from Rialto, California, to Abbey Road in Los Angeles, California. The agent testified that petitioners originally approximated that one trip per week was taken. After securing invoices from Abbey Road, which totaled 183 in 1992 and 188 in 1993,[4] the agent estimated that two trips were taken per week, for a total of 100 trips per year.

---

[3](...continued)
any passenger automobile.

[4] For 1993, 2½ months of invoices were missing.

Petitioners argue that the deduction for car and truck mileage should be based on 183 trips in 1992 and 188 trips in 1993, because of the number of invoices. They point to the testimony of Mr. Ginsburg, the custodian of records at Abbey Road, who stated that the invoices contained language that the merchandise was purchased and picked up in Los Angeles. However, petitioners did not provide any evidence (such as a diary or log) to corroborate the number of trips that occurred.

Petitioners did not maintain any records (such as an account book, diary, log, or trip sheets) to substantiate the claimed mileage expense deductions. Petitioners failed to substantiate the mileage expenses by adequate records. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). They also failed to substantiate the mileage expenses by other sufficient evidence. Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985). Consequently, petitioners are not entitled to the claimed car and truck expenses in excess of the $1,680 in 1992 and the $1,680 in 1993 conceded by respondent.

Issue 3. Cost of Goods Sold (Supplies)

Cost of goods sold is subtracted from gross receipts from sales to determine gross income from sales. Sec. 1.61-3(a), Income Tax Regs. The cost of goods purchased for resale is

determined by making proper adjustments for opening and closing inventory and purchases.  Sec. 1.162-1(a), Income Tax Regs.

Petitioners did not determine their cost of goods sold for 1992 and 1993.  Instead, they listed purchases from Abbey Road as the deductible expense "supplies".  Respondent concedes that petitioners are entitled to cost of goods sold equal to the amount of goods purchased during the year.

For 1993, petitioners and respondent do not agree on the amount of goods purchased.  On petitioners' 1993 Schedule C, they claimed supplies of $10,500, and on their 1993 amended Schedule C, they claimed supplies of $61,250.  Petitioners now contend that the cost of goods sold for 1993 was less than $61,250.  Respondent concedes that petitioners are entitled to cost of goods sold of $61,250 in 1993.  We sustain respondent's allowance of cost of goods sold in 1993 of $61,250, as claimed by petitioners in their amended 1993 return.

Issue 4.  Markup Percentage and Gross Receipts

Taxpayers are required to maintain records, including the documentation of transactions, expenses, etc.  Sec. 6001.  It is well established that if a taxpayer's records are inadequate to permit a verification of the returns or if the records are unreliable, the Commissioner may determine the taxpayer's taxable income by other reasonable means, including the percentage markup method.  See Bollella v. Commissioner, 374 F.2d 96 (6th Cir.

1967), affg. T.C. Memo. 1965-162; <u>Bernstein v. Commissioner</u>, 267 F.2d 879 (5th Cir. 1959), affg. T.C. Memo. 1956-260; <u>Kurnick v. Commissioner</u>, 232 F.2d 678 (6th Cir. 1956), affg. per curiam T.C. Memo. 1955-31; <u>Stone v. Commissioner</u>, 22 T.C. 893 (1954). Under the percentage markup method, gross receipts are determined by adding a percentage to the cost of goods sold. The burden of proof is on petitioners to show that respondent's method does not clearly reflect income. Rule 142(a); see sec. 446.

Since petitioners did not keep books to show gross receipts from sales, it was permissible for respondent to apply a markup percentage to determine their gross receipts for 1992 and 1993.

In 1992, on their Schedule C, petitioners claimed supplies of $1,200 and stated gross receipts of $6,100 (a markup of over 500 percent). Later, petitioners and respondent agreed that the amount of purchases (cost of goods sold) was $29,236. On the basis of the cost of goods sold, respondent asserted that petitioners had gross receipts in 1992 of $48,677 (using the markup of 66.5 percent reflected on petitioners' amended 1993 return).

In 1993, on their Schedule C, petitioners listed gross receipts of $17,439 (a markup of 66.1 percent), and in their amended return, they listed gross receipts of $102,000 (a markup of 66.5 percent). As noted above, respondent conceded that the cost of goods sold in 1993 was $61,250. On the basis of the cost

of goods sold, respondent asserted that petitioners had gross receipts in 1993 of $102,000, as stated in the 1993 amended return (a markup of 66.5 percent).

Petitioners argue that respondent's markup percentage is excessive. They assert that the sale price and markup percentage were as follows:

|  | Sale Price | Markup Percentage |
|---|---|---|
| Compact discs | $11.99 | 15% |
| Cassettes | 7.99 | 15% |
| Cassette singles | 2.49 | 25% |
| Records | 4.99 | 25% |
| Overall average |  | 20% |

In support of this, petitioners point to Mr. Ginsburg's testimony regarding the typical sale price of music products. He stated that the typical list prices for "release products on sale" were:

| Compact discs | $11.99/12.99 |
|---|---|
| Cassettes | $7.98/8.98 |

In evaluating petitioners' conclusion that the overall markup percentage is 20 percent, we begin with their asserted sale price. Petitioners attempted to establish their sale price by Mr. Ginsburg's testimony regarding the typical price for release products on sale, and by receipts from Target, Blockbuster Music, and Circuit City. However, Mr. Ginsburg stated he had no knowledge of what petitioners were actually selling their products for, and petitioners presented no evidence regarding the prices they sold the products for. We are not persuaded of the accuracy of petitioners' stated sale prices. We

find the "list price" set by the music industry (as stated in the invoices from Abbey Road) to be a more accurate reflection of petitioners' sale prices.  The invoices provide the following list prices for the purchases made by petitioners:

|  | List Prices |
|---|---|
| Batteries | $2.39 |
|  | 4.09 |
|  | 6.09 |
| Cleaning kits | 2.89 |
| Blank cassette tapes | 2.79 |
|  | 2.99 |
| Cassette singles | 3.49 |
| Maxicassette | 5.98 |
| Records | 5.98 |
| Cassettes | 4.98 |
|  | 5.98 |
|  | 6.49 |
|  | 6.98 |
|  | 7.98 |
|  | 8.98 |
|  | 9.98 |
|  | 10.98 |
|  | 12.98 |
| Compact discs | 13.99 |
|  | 14.99 |
|  | 15.99 |
|  | 16.99 |

Next, we evaluate the markup percentage.  Petitioners contend that there was a constant markup percentage for each item:  15 percent for compact discs, 15 percent for cassette singles, 25 percent for cassette singles, and 25 percent for records.  While petitioners suggest constant purchase prices,

petitioners in fact purchased the goods with varying list prices at varying costs.  Examining a sample of the invoices from 1992 and 1993, the markup percentage varied for each product as follows:

|  | Markup percentage |
|---|---|
| Batteries | 54-63% |
| Cleaning kits | 70% |
| Blank cassette tapes | 66-72% |
| Records | 55% |
| Cassette singles | 75% |
| Maxicassette | 55-94% |
| Cassettes | 53-92% |
| Compact discs | 36-66% |

The markup percentage of 66.5 percent used by respondent in both 1992 and 1993 is consistent with the sample invoices we examined.  Petitioners have not shown that the markup percentage was otherwise.  Thus, we find that petitioners have failed to meet their burden of proof in regard to 1993, and that respondent has met his burden for the increased deficiency in 1992.  We hold that petitioners had gross receipts of $48,677 in 1992 and $102,000 in 1993.

Issue 5.  Section 6662(a) Accuracy-Related Penalties

Respondent determined that petitioners are liable for accuracy-related penalties for 1992 and 1993 under section 6662(a) because the underpayments of income tax for those years were attributable to negligence.  Petitioners contend that they are not liable for the accuracy-related penalties for either year.

Section 6662 imposes a penalty equal to 20 percent of the part of the underpayment of tax that is attributable to negligence.  Sec. 6662(a) and (b)(1).  For purposes of section 6662, negligence is a failure to reasonably attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c).  Negligence is defined as "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstance.'"  Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)).  A taxpayer has the burden of proving that the Commissioner's determination of an addition to tax is in error.  Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

The accuracy-related penalty under section 6662(a) does not apply to any part of an underpayment if the taxpayer shows that there is reasonable cause for that part of the underpayment and that the taxpayer acted in good faith based on the facts and circumstances.  Sec. 6664(c)(1).

In petitioners' closing statement and posttrial brief, they argue that they are not liable for the penalties because of their reasonable and good faith efforts, citing Lyons v. Commissioner, T.C. Memo. 1991-84.  In Lyons, the taxpayers had a reasonable system for maintaining financial records and preparing their tax returns.  In addition, the taxpayers had a relationship with an accountant who prepared their returns.  While many of the relevant records were unavailable to the taxpayers, the Court

noted that many of the records were relinquished in a bankruptcy proceeding and some of the records were not recovered from their accountant. The Court determined that the taxpayers were not liable for the negligence penalty.

Petitioners argue that they "made repeated attempts to retrieve all records and receipts from their accountant, who died Dec. 1996." Petitioners' 1992 and 1993 returns were prepared by Bernadette Henderson of Green's Tax Service, and petitioners' amended 1993 return was prepared by Lee Green of Green's Tax Service. Petitioners did not testify on their own behalf to describe the circumstances in regard to the preparation of the returns, and they did not call anyone involved with Green's Tax Service. Instead, in closing arguments, Mr. Bundridge described their reliance on their accountant Lee Green. However, there is no evidence in the record to support petitioners' conclusion that their good faith reliance on the accountant constituted reasonable cause. Therefore, we sustain respondent's determinations with respect to the penalties for 1992 and 1993.

To reflect the foregoing,

<u>An order will be issued granting respondent's motion, and a decision will be entered under Rule 155.</u>